UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>JOY SURRATT<br><br>ID: xxx-xx-5167<br><br><br>ADDISON AT CHERRY CREEK<br>    Movant,<br><br>v.<br><br>JOY SURRATT,<br><br>    Respondents,<br><br>CYNTHIA SKEEN, ESQ.,<br><br>    Trustee. | Case No 13-21033-EEB<br>Chapter 7 |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Movant, Addison at Cherry Creek by attorneys, Tschetter Hamrick Sulzer, P.C., moves for relief from the automatic stay pursuant to § 362(d)2 and §365(b), and as grounds, states as follows:

1.  Movant is the lessor of the rental property located at 9100 E Florida Ave #5-102 Denver, CO 80247 (the "Premises").

2. The leased property is residential real estate. The monthly rental amount for the property is $1,200. See Attached Lease Agreement, exhibit 1.

3. Debtor filed their bankruptcy petition on 6/27/13. Debtor has defaulted by failing to make monthly rental payments. Debtor owes in excess of $4,403.09 in back rent and other charges. See attached exhibit 2, the ledger. Of the amount's owed, Debtor owes $1,622.57 pre-petition rent and fees. The remainder of the obligation is post petition, rent for July and August 2013.

4.  Debtor(s) currently occupy the Premises and have not made a payment to the owner/manager since 5/31/13. Movant obtained a pre-petition judgment for possession, that was certified by the Court that the exception to the stay existed pursuant to U.S.C. §362 (b)22. However, due to Debtor filing an amended petition and objecting to the certification, Movant is unable to proceed

with the execution of the writ of restitution without an additional order that the automatic stay no longer applies to this property.

5. "Under the Bankruptcy Code, a debtor in possession may not assume an unexpired lease on which the debtor has defaulted unless, at the time of assumption the debtor " cures or provides adequate assurance the debtor will promptly cure, such default." 11 U.S.C. §365(b). [Footnote Omitted]. The debtor in possession must also "provide adequate assurance of future performance under such . . . lease." LJC Corporation v. Boyle, 768 F.2d 1489, 1491 (U.S. Ct. App. Dist. Col. Cir. 1985).

6. Debtor has not cured its default on the lease, provided adequate assurance that it will cure the default, or provided adequate assurance of future performance under the lease.

7. Debtor does not have any equity in the property covered by the lease, as Debtor is not an owner of the property and such property is not necessary to an effective reorganization of the Debtor.

8. Upon information and belief, the respondents are not in the military service of the United States or any other nation with which the United States may be allied in the prosecution of war, and have not been ordered to report for such military service or for induction into such military service. *See* Department of Defense Manpower Data Center certificate attached as Exhibit. Movant's affidavit in support of this statement is submitted herewith.

WHEREFORE, Movant prays for the Court to enter an Order granting Movant relief from the automatic stay; and for such further and other relief as the Court may deem just and appropriate.

Respectfully submitted this August 14, 2013.

TSCHETTER HAMRICK SULZER, P.C.

By: _____
Attorneys for Movant
Peter E. Muccio, #34026
3600 S. Yosemite St. Ste 828
Denver, CO 80237
Phone (303)699-3484
Fax(720)449-0160
E-mail: pm@thslawfirm.com

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that a true copy of the foregoing **MOTION FOR RELIEF FROM AUTOMATIC STAY and PROPOSED ORDER** was placed in the United States first class mail, postage prepaid, this August 14, 2013, addressed to the following:

Debtor(s):
Joy Surratt
9100 E Florida Ave
#5-102
Denver, CO 80247

Addison at Cherry Creek
9110 E. Florida Ave.
Denver, CO 80247

Cynthia Skeen
PO Box 218
Georgetown, CO 80444

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No 13-21033-EEB |
| JOY SURRATT | ) | Chapter 7 |
| | ) | |
| ID: xxx-xx-5167 | ) | |
| | ) | |
| ADDISON AT CHERRY CREEK | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOY SURRATT, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| CYNTHIA SKEEN, ESQ., | ) | |
| | ) | |
| Trustee. | ) | |

**AFFIDAVIT RE: MILITARY SERVICE**

1.  I am an attorney for the movant.

2.  I have reviewed the allegations of the Movant's motion for relief from stay filed simultaneously herewith, and know the same to be true and correct to the best of my knowledge and belief.

3.  To the best of my knowledge and belief, based on a review of the pleadings in this case as well as the attached certificate, the respondents are not in the military service of the United States or any other nation with which the United States may be allied in the prosecution of war, and have not been ordered to report for such military service or for induction into such military service. This includes inquiry with the website of the Department of Defense Manpower Data Center. The facts within the knowledge of affiant are that the debtor has not represented that they work in the military.

AFFIANT SAYS NOTHING FURTHER.

STATE OF COLORADO    )
                   ) ss.

COUNTY OF DENVER )

I Peter Muccio being of age and first duly sworn, deposes and says:

1. That I am an attorney for the movant in the above matter;
2. That I have read the foregoing Motion for Relief from Stay, and that the contents thereof are true to my own knowledge.

_____

Subscribed and sworn to before me this Wednesday, August 14, 2013.

_Janet E. Monroe_
Notary Public

My Commission Expires: 6/3/2015

Department of Defense Manpower Data Center

Results as of : Aug-14-2013 01:34:12
SCRA 3.0



Status Report
Pursuant to Servicemembers Civil Relief Act

Last Name: <u>SURRATT</u>
First Name: <u>JOY</u>
Middle Name:
Active Duty Status As Of: <u>Aug-14-2013</u>

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: P4HEX1D2901DCD0

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No 13-21033-EEB |
| JOY SURRATT ) | Chapter 7 |
| ) | |
| ID: xxx-xx-5167 ) | |
| ) | |
| ) | |
| ADDISON AT CHERRY CREEK ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| JOY SURRATT, ) | |
| ) | |
| Respondents, ) | |
| ) | |
| CYNTHIA SKEEN, ESQ., ) | |
| ) | |
| Trustee. ) | |

---

### NOTICE OF MOTION FOR RELIEF FROM STAY AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 362(d)

---

### OBJECTION DEADLINE: 9/5/2013 .

YOU ARE HEREBY NOTIFIED that a Motion for Relief from Stay has been filed, a copy of which is attached hereto.

A hearing on the motion has been set for **September 12, 2013 at 1:30 PM** at the at THE BYRON ROGERS FEDERAL COURTHOUSE 1929 STOUT STREET Denver, Colorado 80202, Courtroom **(C-501)**. The hearing will be conducted in accordance with the provisions of L.B.R. 4001-1.

IF YOU DESIRE TO OPPOSE THIS MOTION, you must file with this court a WRITTEN OBJECTION to the motion on or before the objection deadline stated above and serve a copy upon movant's attorney, whose address is listed below.

If you file an objection, you are REQUIRED to comply with L.B.R. 4001-1 regarding hearing procedures, including (1) the timely submission and exchange of witness lists and exhibits and (2) attendance at the above-scheduled hearing in person or through counsel, if represented.

**IF YOU FAIL TO FILE AN OBJECTION,** the scheduled hearing will be **vacated,** and an order granting the relief requested may be granted without further notice to you.

Dated: 8/14/2013

Attorneys for Movant
Tschetter Hamrick Sulzer, PC
Peter E. Muccio, #34026
3600 S. Yosemite St. Ste 828
Denver, CO 80237
Phone (303)699-3484
Fax(720)449-0160
E-mail: pm@thslawfirm.com

The undersigned hereby certifies that a true copy of the foregoing **NOTICE OF MOTION FOR RELIEF FROM STAY AND OPPORTUNITY FOR HEARING PURSUANT TO 11 U.S.C. § 362(d)** was placed in the United States first class mail, postage prepaid, this August 14, 2013, addressed to the following:

Debtors:
Joy Surratt
9100 E Florida Ave
#5-102
Denver, CO 80247

Addison at Cherry Creek
9110 E. Florida Ave.
Denver, CO 80247

Cynthia Skeen
PO Box 218
Georgetown, CO 80444

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>JOY SURRATT<br><br>ID: xxx-xx-5167<br><br><br>ADDISON AT CHERRY CREEK<br>      Movant,<br><br>v.<br><br>JOY SURRATT,<br><br>      Respondents,<br><br>CYNTHIA SKEEN, ESQ.,<br><br>      Trustee. | Case No 13-21033-EEB<br>Chapter 7 |

## CERTIFICATE OF SERVICE

      The undersigned certifies that Movant's Motion for Relief From Stay, and Notice of Hearing or Preliminary Hearing, dated September 12, 2013, were served in this case on Wednesday, August 14, 2013, by placing true and correct copies of the same in the United States first class mail, postage prepaid, addressed to the following:

Debtors:
Joy Surratt
9100 E Florida Ave
#5-102
Denver, CO 80247

Addison at Cherry Creek
9110 E. Florida Ave.
Denver, CO 80247

Cynthia Skeen
PO Box 218
Georgetown, CO 80444

Dated this August 14, 2013.

                              TSCHETTER HAMRICK SULZER, P.C.

By: _____
     Peter E. Muccio, #34026
     Attorneys for Movant
     3600 S. Yosemite St. Ste 828
     Denver, CO 80237
     (303)699-3484




**Apartment Lease Contract**

Date of Lease Contract: **January 18, 2013**
(when the Lease Contract is filled out)

This is a binding document. Read carefully before signing.

### Moving In -- General Information

1. **PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between you, the resident(s) *(list all people signing the Lease Contract)*:
   **Joy Surratt**

   and us, the owner:
   **KFED DOR 85B LLC,EPS Colorado LLC,KOR Colorado LLC, et.al**

   *(name of apartment community or title holder)*. You've agreed to rent Apartment No. **05102**, at **9100 E. Florida Ave.**
   (street address) in **Denver** (city), Colorado, **80247** (zip code) for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors' in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

2. **OCCUPANTS.** The apartment will be occupied only by you and *(list all other occupants not signing the Lease Contract)*:

   No one else may occupy the apartment. Persons not listed above must not stay in the apartment for more than **7** consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

3. **LEASE TERM.** The initial term of the Lease Contract begins on the **18th** day of **January**, **2013**, and ends at midnight the **17th** day of **November**, **2013**. This Lease Contract will automatically renew month-to-month unless either party gives at least **60** days written notice of termination or intent to move-out as required by paragraph 37. If the number of days isn't filled in, at least 30 days notice is required.

4. **SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contact for all residents in the apartment is $ **250.00**, due on or before the date this Lease Contract is signed.

5. **KEYS AND FURNITURE.** You will be provided **2** apartment key(s), **2** mailbox key(s), and **1** other access devices for **Amenities**. Your apartment will be *(check one)*: ☐ furnished or ☒ unfurnished.

6. **RENT AND CHARGES.** Unless modified by addenda, you will pay $ **1200.00** per month for rent, payable in advance and without demand:

   ☒ at the on-site manager's office, or
   ☒ at our online payment site, or
   ☒ at **Drop Box**

   Prorated rent of $ **541.94** is due for the remainder of the *(check one)*:
   ☒ 1st month or ☐ 2nd month, on _____.

   Otherwise, you must pay your rent on or before the 1st day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, moneyorder, or one monthly check rather than multiple checks. If you don't pay all rent on or before the **3rd** day of the month, you'll pay an initial late charge of $ **75.00** plus a late charge of $ **0.00** per day after that delinquency date until paid in full. Daily late charges will not exceed 15 days for any single month's rent. You'll also pay a charge of $ **40.00** for each returned check or rejected electronic payment, plus initial and daily late charges from delinquency date until we receive acceptable payment. If you are delinquent, all remedies under this Lease Contract will be authorized. We'll also have all other remedies for such violation.

7. **UTILITIES.** We'll pay for the following items, if checked:

   ☐ water ☐ gas ☐ electricity ☐ master antenna
   ☐ wastewater ☐ trash ☐ cable TV ☐ other_____

   You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected--including disconnection for not paying your bills--until the lease term or renewal period ends. Cable channels that are provided may be changed during the lease term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-operated lighting. If any utilities are submetered for the apartment, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

8. **INSURANCE.** We do not maintain insurance to cover your personal property or personal injury. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

   We urge you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

   Additionally, you are *[check one]* ☐ required to purchase personal liability insurance ☒ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

9. **LOCKS AND LATCHES.** You must notify us immediately of any inoperable door, window, latch, or lock. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done either before you move in or, if the apartment has a keyless deadbolt on each exterior door, within 10 days after you move in.

   You may at any time ask us to: (1) install one keyed deadbolt lock on an exterior door if it does not have one; (2) install a bar and/or sliding door pinlock on each sliding glass door; (3) install one keyless deadbolt on each exterior door; (4) install one doorviewer on each exterior door; and (5) change or rekey locks or latches during the lease term. We must comply with those requests, but you must pay for them.

   **What You Are Now Requesting.** You now request the following to be installed at your expense (if one is not already installed), subject to any statutory restrictions on what you may request.

   ☐ keyed deadbolt lock ☐ doorviewer
   ☐ keyless deadbolt ☐ sliding door pinlock
   ☐ sliding door bar

   **Payment for Rekeying, Repairs, Etc.** You must pay for all repairs or replacements arising from misuse or damage to devices by you or your family, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair, install, change or rekey the same device during the 30 days preceding your request and we have complied with your request.

### Special Provisions and "What If" Clauses

10. **SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed lease form.

    _____
    _____
    _____
    _____
    See any additional special provisions.

11. **EARLY MOVE-OUT.** You'll be liable to us for a reletting charge of $ _____ if you:
    (1) fail to give written move-out notice as required in paragraphs 23 or 37; or
    (2) move out without paying rent in full for the entire lease term or renewal period; or
    (3) move out at our demand because of your default; or
    (4) are judicially evicted.

    The reletting charge is not a cancellation fee and does not release you from your obligations under this Lease Contract. See the first paragraph of page 2.

**Joy Surratt** *(signature)*

© 2012, National Apartment Association, Inc. - 5/2012, Colorado

EXHIBIT 1
13-21033-EEB

0118201322870300011121550

Page 1 of 6

Not a Release. The reletting charge is not a lease cancellation fee or buyout fee. It is an agreed-to liquidated amount covering only part of our damages, that is, our time, effort, and expense in finding and processing a replacement. These damages are uncertain and difficult to ascertain--particularly those relating to inconvenience, paperwork, advertising, showing apartments, utilities for showing, checking prospects, office overhead, marketing costs, and locator-service fees. You agree that the reletting charge is a reasonable estimate of such damages and that the charge is due whether or not our reletting attempts succeed. If no amount is stipulated, you must pay our actual reletting costs so far as they can be determined. The reletting charge does not release you from continued liability for: future or past-due rent; charges for cleaning, repairing, repainting, or unreturned keys; or other sums due.

12. **REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the apartment community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for--and you must pay for--repairs, replacement costs, and damage to the following if occurring during the lease term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

13. **PROPERTY LEFT IN APARTMENT.** Removal After Surrender, Abandonment, or Eviction. We or law officers may remove and/or store all property remaining in the apartment or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the apartment (see definitions in paragraph 42).

Storage. We may store, but have no duty to store, property removed after judicial eviction, surrender, or abandonment of the apartment. You must pay reasonable charges for our packing, removing, storing, and selling any property. We have a lien on all property removed and stored after surrender, abandonment, or judicial eviction for all sums you owe.

Redemption. If we've removed and stored property after surrender, abandonment, or judicial eviction, you may redeem only by paying all sums you owe, including rent, late charges, reletting charges, storage, damages, etc. We may return redeemed property at the place of storage, the management office, or the apartment (at our option). We may require payment by cash, money order, or certified check.

Disposition or Sale. Except for animals and property removed after the death of a sole resident, we may throw away or give to a charitable organization all items of personal property that are: (1) left in the apartment after surrender or abandonment; or (2) left outside more than 1 hour after a writ of possession is executed, following a judicial eviction. Animals removed after surrender, abandonment, or eviction may be kenneled or turned over to local authorities or humane societies. Property not thrown away or given to charity may be disposed of only by sale, which must be held no sooner than 30 days after written notice of date, time, and place of sale is sent by both regular mail and certified mail (return receipt requested) to your last known address. The notice must itemize the amounts you owe and the name, address, and phone number of the person to contact about the sale, the amount owed, and your right to redeem the property. Sale may be public or private, is subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. Proceeds exceeding sums owed must be mailed to you at your last known address within 30 days after sale.

14. **FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, all future rent will be automatically accelerated without notice and immediately due. We also may end your right of occupancy and recover damages, future rent, attorney's fees, court costs, and other lawful charges. Our rights and remedies under paragraphs 11 and 32 apply to acceleration under this paragraph.

15. **RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10, by a written addendum or amendment signed by you and us, or by reasonable changes of apartment rules allowed under paragraph 18. If, at least 5 days before the advance notice deadline referred to in paragraph 3, we give you written notice of rent increases or lease changes effective when the lease term or renewal period ends, this Lease Contract will automatically continue month-to-month with the increased rent or lease changes. The new modified Lease Contract will begin on the date stated in the notice (without necessity of your signature) unless you give us written move-out notice under paragraph 37.

16. **DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the apartment.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the apartment is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the initial term as set forth in Paragraph 3--and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the apartment will be ready on a specific date--you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.
(2) If we give written notice to any of you before the initial term as set forth in Paragraph 3 and the notice states that construction delay is expected and that the apartment will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new initial term as set forth in Paragraph 3 for all purposes. This new date may not be moved to an earlier date unless we and you agree.

17. **DISCLOSURE RIGHTS.** If someone requests information on you or your rental history for law-enforcement, governmental, or business purposes, we may provide it.

## While You're Living in the Apartment

18. **COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written apartment rules and community policies, including instructions for care of our property. Our rules are considered part of this Lease Contract. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the apartment community and do not change dollar amounts on page 1 of this Lease Contract.

19. **LIMITATIONS ON CONDUCT.** The apartment and other areas reserved for your private use must be kept clean. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with apartment rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the apartment community: use candles or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Conducting any kind of business (including child care services) in your apartment or in the apartment community is prohibited--except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your apartment for business purposes. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the apartment community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any apartment rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the community.

You agree to notify us if you or any occupants are convicted of any felony, or misdemeanor involving a controlled substance, violence to another person or destruction of property. You also agree to notify us if you or any occupant registers as a sex offender in any state. Informing us of criminal convictions or sex offender registry does not waive our right to evict you.

20. **PROHIBITED CONDUCT.** You and your occupants or guests may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the apartment community; disrupting our business operations; manufacturing, delivering, possessing with intent to deliver, or otherwise possessing a controlled substance or drug paraphernalia; engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the apartment community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the apartment community; or injuring our reputation by making bad faith allegations against us to others.

21. **PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A vehicle is unauthorized or illegally parked in the apartment community if it:

(1) has a flat tire or other condition rendering it inoperable; or
(2) is on jacks, blocks or has wheel(s) missing; or
(3) has no current license or no current inspection sticker; or
(4) takes up more than one parking space; or
(5) belongs to a resident or occupant who has surrendered or abandoned the apartment; or
(6) is parked in a marked handicap space without the legally required handicap insignia; or
(7) is parked in a space marked for manager, staff, or guest at the office; or
(8) blocks another vehicle from exiting; or
(9) is parked in a fire lane or designated "no parking" area; or

0118201322870400111121550

Joy Surratt

(10) is parked in a space marked for other resident(s) or unit(s); or
(11) is parked on the grass, sidewalk, or patio; or
(12) blocks garbage trucks from access to a dumpster.

22. **RELEASE OF RESIDENT.** Unless you're entitled to terminate this Lease Contract under paragraphs 10, 16, 23, 31, or 37, you won't be released from this Lease Contract for any reason--including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, bad health, or death.

23. **MILITARY PERSONNEL CLAUSE.** You may terminate the Lease Contract if you enlist or are drafted or commissioned and on active duty in the U.S. Armed Forces. You also may terminate the Lease Contract if:

    (1) you are (i) a member of the U.S. Armed Forces or reserves on active duty or (ii) a member of the National Guard called to active duty for more than 30 days in response to a national emergency declared by the President; *and*
    (2) you (i) receive orders for permanent change-of-station, (ii) receive orders to deploy with a military unit or as an individual in support of a military operation for 90 days or more, or (iii) are relieved or released from active duty.

    After you deliver to us your written termination notice, the Lease Contract will be terminated under this military clause 30 days after the date on which your next rental payment is due. You must furnish us a copy of your military orders, such as permanent change-of-station orders, call-up orders, or deployment orders or written notification from your commanding officer. Military permission for base housing does not constitute change-of-station order. After you move out, we'll return your security deposit, less lawful deductions. For the purposes of this Lease Contract, orders described in (2) above will only release the resident who qualifies under (1) and (2) above and receives the orders during the Lease Contract term and such resident's spouse or legal dependents living in the resident's household. A co-resident who is not your spouse or dependent cannot terminate under this military clause. Unless you state otherwise in paragraph 10, you represent when signing this Lease Contract that: (1) you do not already have deployment or change-of-station orders; (2) you will not be retiring from the military during the Lease Contract term; and (3) the term of your enlistment or obligation will not end before the Lease Contract term ends. Even if you are entitled to terminate this Lease Contract under this paragraph, liquidated damages for making a false representation of the above will be the amount of unpaid rent for the remainder of the lease term when and if you move out, less rents from others received in mitigation under paragraph 32. You must immediately notify us if you are called to active duty or receive deployment or permanent change-of-station orders.

24. **RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other safety or security devices. You agree to make every effort to follow the Security Guidelines on page 5.

    Smoke and Carbon Monoxide Detectors. We'll furnish smoke and carbon monoxide detectors as required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must pay for and replace batteries as needed, unless the law provides otherwise. We may replace dead or missing batteries at your expense, without prior notice to you. You must immediately report smoke and carbon monoxide detector malfunctions to us. Neither you nor others may disable smoke and carbon monoxide detectors. If you disable or damage the smoke and carbon monoxide detector, or fail to replace a dead battery or report known smoke and carbon monoxide detector malfunctions to us, and if your action or inaction causes loss, damage, or fines from fire, smoke, or water to us or others, you will be liable for such loss, damage, or fines.

    Casualty Loss. We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. Unless we instruct otherwise, you must--for 24 hours a day during freezing weather--(1) keep the apartment heated to at least 50 degrees; (2) keep cabinet and closet doors open; and (3) drip hot and cold water faucets. You'll be liable for damage to our and others' property if damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

    Crime or Emergency. Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. You won't treat any of our security measures as an express or implied warranty of security, or as a guarantee against crime or of reduced risk of crime. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. We're not obliged to furnish security personnel, security lighting, security gates or fences, or other forms of security unless required by statute. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the apartment community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

25. **CONDITION OF THE PREMISES AND ALTERATIONS.** Except for conditions materially affecting the health or safety of ordinary persons, you accept the apartment, fixtures, and furniture as is. We disclaim all implied warranties, including but not limited to warranties of quiet enjoyment. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

    You must use customary diligence in maintaining the apartment and not damaging or littering the common areas. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter our property. No holes or stickers are allowed inside or outside the apartment. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless statutorily allowed or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke detectors, furniture, telephone and cable TV wiring, screens, locks, and security devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the apartment; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the apartment (whether or not we consent) become ours unless we agree otherwise in writing.

26. **REQUESTS, REPAIRS, AND MALFUNCTIONS. IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST--FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS--IT MUST BE SIGNED AND IN WRITING TO OUR DESIGNATED REPRESENTATIVE** (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

    Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the apartment if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

    If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate this Lease Contract within a reasonable time by giving you written notice. If the Lease Contract is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

27. **ANIMALS.** No animals (including mammals, reptiles, birds, fish, rodents and insects) are allowed, even temporarily, anywhere in the apartment or apartment community unless we've so authorized in writing. If we allow an animal, you must sign a separate animal addendum, which may require additional deposits, rents, fees or other charges; however, if the animal is a service animal for a disabled person, you are not required to post an animal deposit. An animal deposit is considered a general security deposit. You must remove an illegal animal within 24 hours of notice from us, or you will be considered in default of this Lease Contract. We will authorize a service animal for a disabled (handicapped) person. We may require a written statement from a qualified professional verifying the need for the service animal. You must not feed stray or wild animals.

    If you or any guest or occupant violates animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the apartment at any time during your term of occupancy (with or without our consent), we'll charge you for defleaing, deodorizing, and shampooing. Initial and daily animal-violation charges and animal-removal charges are liquidated damages for our time, inconvenience, and overhead (except for attorney's fees and litigation costs) in enforcing animal restrictions and rules. We may remove an unauthorized animal by (1) leaving, in a conspicuous place in the apartment, a 24-hour written notice of intent to remove the animal, and (2) following the procedures of paragraph 28. We may keep or kennel the animal or turn it over to a humane society or local authority. When keeping or kenneling an animal, we won't be liable for loss, harm, sickness, or death of the animal unless due to our negligence. We'll return the animal to you upon request if it has not already been turned over to a humane society or local authority. You must pay for the animal's reasonable care and kenneling charges. We have no lien on the animal for any purpose.

28. **WHEN WE MAY ENTER.** If you or any guest or occupant is present, then repairers, servicers, contractors, our representatives or other persons listed in (2) below may peacefully enter the apartment at reasonable times for the purposes listed in (2) below. If nobody is in the apartment, such persons may enter peacefully and at reasonable times by duplicate or master key (or by breaking a window or other means when necessary in emergencies) if:

    (1) written notice of the entry is left in a conspicuous place in the apartment immediately after the entry; and
    (2) entry is for: responding to your request; making repairs or replacements; estimating repair or refurbishing costs; performing pest control; doing preventive maintenance; changing filters; testing or replacing smoke-detector batteries; retrieving unreturned tools, equipment or appliances; preventing waste of utilities; exercising

0118201322870500111121550

Joy Surratt
© 2012, National Apartment Association, Inc. - 5/2012, Colorado

Page 3 of 6

our contractual lien; leaving notices; delivering, installing, reconnecting, or replacing appliances, furniture, equipment, or security devices; removing or rekeying unauthorized security devices; removing unauthorized window coverings; stopping excessive noise; removing health or safety hazards (including hazardous materials), or items prohibited under our rules; removing perishable foodstuffs if your electricity is disconnected; removing unauthorized animals; cutting off electricity according to statute; retrieving property owned or leased by former residents; inspecting when immediate danger to person or property is reasonably suspected; allowing persons to enter as you authorized in your rental application (if you die, are incarcerated, etc.); allowing entry by a law officer with a search or arrest warrant, or in hot pursuit; showing apartment to prospective residents (after move-out or vacate notice has been given); or showing apartment to government inspectors for the limited purpose of determining housing and fire ordinance compliance by us and to lenders, appraisers, contractors, prospective buyers, or insurance agents.

29. **MULTIPLE RESIDENTS OR OCCUPANTS.** Each resident is jointly and severally liable for all lease obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. In eviction suits, each resident is considered the agent of all other residents in the apartment for service of process. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 42.

## Replacements

30. **REPLACEMENTS AND SUBLETTING.** Replacing a resident, subletting, or assignment is allowed only when we consent in writing. If departing or remaining residents find a replacement resident acceptable to us before moving out and we expressly consent to the replacement, subletting, or assignment, then:

    (1) a reletting charge will not be due;
    (2) a reasonable administrative (paperwork) and/or transfer fee will be due, and a rekeying fee will be due if rekeying is requested or required; and
    (3) the departing and remaining residents will remain liable for all lease obligations for the rest of the original lease term.

**Procedures for Replacement.** If we approve a replacement resident, then, at our option: (1) the replacement resident must sign this Lease Contract with or without an increase in the total security deposit; or (2) the remaining and replacement residents must sign an entirely new Lease Contract. Unless we agree otherwise in writing, your security deposit will automatically transfer to the replacement resident as of the date we approve. The departing resident will no longer have a right to occupancy or a security deposit refund, but will remain liable for the remainder of the original lease term unless we agree otherwise in writing--even if a new Lease Contract is signed.

## Responsibilities of Owner and Resident

31. **RESPONSIBILITIES OF OWNER.** We'll act with customary diligence to:

    (1) keep common areas reasonably clean, subject to paragraph 25;
    (2) maintain fixtures, furniture, hot water, heating and A/C equipment;
    (3) substantially comply with applicable federal, state, and local laws regarding safety, sanitation, and fair housing; and
    (4) make all reasonable repairs, subject to your obligation to pay for damages for which you are liable.

    If we violate any of the above, you may terminate this Lease Contract and exercise other remedies under state statute only as follows:

    (a) you must make a written request for repair or remedy of the condition, and all rent must be current at the time;
    (b) after receiving the request, we have a reasonable time to repair, considering the nature of the problem and the reasonable availability of materials, labor, and utilities;
    (c) if we haven't diligently tried to repair within a reasonable time, you must then give us written notice of intent to terminate the Lease Contract unless the repair is made within 7 days; and
    (d) if repair hasn't been made within 7 days, you may terminate this Lease Contract and exercise other statutory remedies. Security deposits and prorated rent will be refunded as required by law.

32. **DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the apartment rules, or fire, safety, health, or criminal laws, regardless of whether or where arrest or conviction occurs; (3) you abandon the apartment; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your apartment; (7) you or any guest or occupant engages in any of the prohibited conduct described in Paragraph 20; or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government.

    **Right to cure.** You have a statutory right to cure all violations within 3 days except for (1) violent or drug-related felonies, (2) conduct unreasonably dangerous to another person, and (3) willfully endangering or damaging the property of another. All remedies below are subject to the foregoing.

    **Eviction.** If you default, we may end your right of occupancy by giving you written notice required by statute. Notice may be by: (1) personal delivery to any resident; (2) personal delivery at the apartment to any occupant over 16 years old; or (3) affixing the notice to the apartment's main entry door. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations. After giving notice to vacate or filing an eviction suit, we may still accept rent or other sums due; the filing or acceptance doesn't waive or diminish our right of eviction, or any other contractual or statutory right. Accepting money at any time doesn't waive our right to damages; past or future rent or other sums; or to continue with eviction proceedings.

    **Acceleration.** All monthly rent for the rest of the lease term or renewal period will be accelerated automatically without notice or demand (before or after acceleration) and will be immediately due and delinquent if, without our written consent: (1) you move out, remove property in preparing to move out, or give oral or written notice (by you or any occupant) of intent to move out before the lease term or renewal period ends; and (2) you've not paid all rent for the entire lease term or renewal period. Remaining rent also will be accelerated if you're judicially evicted or move out when we demand because you've defaulted. Acceleration is subject to our mitigation obligations below.

    **Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) rent for the holdover period will be increased by 25% over the then-existing rent, without notice; (3) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of the holdover; and (4) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your apartment while you continue to hold over.

    **Other Remedies.** We may report unpaid amounts to credit agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10, in addition to other sums due. Upon your default, we have all other legal remedies, including lease termination. Unless a party is seeking exemplary, punitive, sentimental or personal-injury damages, the prevailing party may recover from the non-prevailing party attorney's fees and all other litigation costs. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 18% interest per year from due date, compounded annually. You must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline.

    **Mitigation of Damages.** If you move out early, you'll be subject to paragraph 11 and all other remedies. We'll exercise customary diligence to relet and minimize damages. We'll credit all subsequent rent that we actually receive from subsequent residents against your liability for past-due and future rent and other sums due.

## General Clauses

33. **MISCELLANEOUS.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us. Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing. No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, acceleration, liens, or other rights isn't a waiver under any circumstances. All of your obligations under this Lease Contract (including payment of all sums) are independent covenants. A violation on our part is not a defense to eviction. Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo, letter or fax that was given. Fax signatures are binding. All notices must be signed.

    Exercising one remedy won't constitute an election or waiver of other remedies. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties. All remedies are cumulative. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract. All notices and documents may be in English and, at our option, in any language that you read or speak. All

0118201322870éco11121550

English and, at our option, in any language that you read or speak. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies. This Lease Contract is subordinate or superior to existing and future recorded mortgages, at lender's option. All lease obligations must be performed in the county where the apartment is located.

WAIVER OF JURY TRIAL. To minimize legal expenses and, to the extent allowed by law, you and we agree that a trial of any lawsuit based on statute common law, and/or related to this Lease Contract shall be to a judge and not a jury.

All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

Obligation to Vacate. Resident shall vacate the Premises and removal all of Resident's personal property therefrom at the expiration of the lease term without further notice or demand from Owner.

FORCE MAJEURE: If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law. Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

34. PAYMENTS. At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent--regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments.

35. ASSOCIATION MEMBERSHIP. We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local apartment (multi-housing) associations for the area where the apartment is located.

## Security Guidelines for Residents

36. SECURITY GUIDELINES. In cooperation with the National Apartment Association, we'd like to give you some important safety guidelines. We recommend that you follow these guidelines and use common sense in practicing safe conduct. Inform all other occupants in your dwelling, including any children you may have, about these guidelines.

PERSONAL SECURITY--WHILE INSIDE YOUR APARTMENT

1. Lock your doors and windows--even while you're inside.
2. Engage the keyless deadbolts on all doors while you're inside.
3. When answering the door, see who is there by looking through a window or peephole. If you don't know the person, first talk with him or her without opening the door. Don't open the door if you have any doubts.
4. If children (who are old enough to take care of themselves) are left alone in your apartment, tell them to use the keyless deadbolt and refuse to let anyone inside while you are gone--regardless of whether the person is a stranger or an apartment maintenance or management employee.
5. Don't put your name,address, or phone number on your key ring.
6. If you're concerned because you've lost your key or because someone you distrust has a key, ask the management to rekey the locks. You have a right to have that done, as long as you pay for the rekeying.
7. Dial 911 for emergencies. If the 911 number does not operate in your area, keep phone numbers handy for the police, fire, and emergency medical services. If an emergency arises, call the appropriate governmental authorities first, then call the management.
8. Check your smoke and carbon monoxide detector monthly to make sure it is working properly and the batteries are still okay.
9. Check your doorlocks, window latches, and other devices regularly to be sure they are working properly.
10. If your doors or windows are unsecure due to break-ins or malfunctioning locks or latches, stay with friends or neighbors until the problem is fixed.
11. Immediately report to management--in writing, dated and signed--any needed repairs of locks, latches, doors, windows, smoke and carbon monoxide detectors, and alarm systems.
12. Immediately report to management--in writing, dated and signed--any malfunction of other safety devices outside your apartment, such as broken gate locks, burned-out lights in stairwells and parking lots, blocked passages, broken railings, etc.
13. Close curtains, blinds, and window shades at night.
14. Mark or engrave your driver's license number or other identification on valuable personal property.

PERSONAL SECURITY--WHILE OUTSIDE YOUR APARTMENT

15. Lock your doors while you're gone. Lock any doorhandle lock, keyed deadbolt lock, sliding door pin lock, sliding door handle latch, and sliding door bar that you have.
16. Leave a radio or TV playing softly while you're gone.
17. Close and latch your windows while you're gone, particularly when you're on vacation.
18. Tell your roommate or spouse where you're going and when you'll be back.
19. Don't walk alone at night. Don't allow your family to do so.
20. Don't hide a key under the doormat or a nearby flowerpot. These are the first places a burglar will look.
21. Don't give entry keys, codes or electronic gate cards to anyone.
22. Use lamp timers when you go out in the evening or go away on vacation. They can be purchased at most hardware stores.
23. Let the manager and your friends know if you'll be gone for an extended time. Ask your neighbors to watch your apartment since the management cannot assume that responsibility.
24. While on vacation, temporarily stop your newspaper and mail delivery, or have your mail and newspaper picked up daily by a friend.
25. Carry your door key in your hand, whether it is daylight or dark, when walking to your entry door. You are more vulnerable when looking for your keys at the door.

PERSONAL SECURITY--WHILE USING YOUR CAR

26. Lock your car doors while driving. Lock your car doors and roll up the windows when leaving your car parked.
27. Don't leave exposed items in your car, such as cassette tapes, wrapped packages, briefcases, or purses.
28. Don't leave your keys in the car.
29. Carry your key ring in your hand whenever you are walking to your car--whether it is daylight or dark and whether you are at home, school, work, or on vacation.
30. Always park in a well-lighted area. If possible, try to park your car in an off-street parking area rather than on the street.
31. Check the back seat before getting into your car.
32. Be careful when stopping at gas stations or automatic-teller machines at night--or anytime when you suspect danger.

PERSONAL SECURITY AWARENESS

No security system is failsafe. Even the best system can't prevent crime. Always act as if security systems don't exist since they are subject to malfunction, tampering, and human error. We disclaim any express or implied warranties of security. The best safety measures are the ones you perform as a matter of common sense and habit.

## When Moving Out

37. MOVE-OUT NOTICE. Before moving out, you must give our representative advance written move-out notice as provided below. Your move-out notice will not release you from liability for the full term of the Lease Contract or renewal term. You will still be liable for the entire lease term if you move out early (paragraph 22) except under the military clause (paragraph 23). YOUR MOVE-OUT NOTICE MUST COMPLY WITH EACH OF THE FOLLOWING:

- We must receive advance written notice of your move-out date. The advance notice must be at least the number of days of notice required in paragraph 3. Oral move-out notice will not be accepted and will not terminate your Lease Contract.
- Your move-out notice must not terminate the Lease Contract sooner than the end of the lease term or renewal period.

YOUR NOTICE IS NOT ACCEPTABLE IF IT DOES NOT COMPLY WITH ALL OF THE ABOVE. Please use our written move-out form. You must obtain from our representative written acknowledgment that we received your move-out notice. If we terminate the Lease Contract, we must give you the same advance notice--unless you are in default.

38. MOVE-OUT PROCEDURES. The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and acceleration of future rent under paragraphs 11 and 32. You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. All residents, guests, and occupants must vacate the apartment before the 30-day period for deposit refund begins. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

39. CLEANING. You must thoroughly clean the apartment, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

40. MOVE-OUT INSPECTION. You should meet with our representative for a move-out inspection. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

41. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES. You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse, including

01182013228707co11121550

Joy Surratt
©2012, National Apartment Association, Inc. - 5/2012, Colorado

stickers, scratches, tears, burns, stains, or unapproved holes; replacement cost of our property that was in or attached to the apartment and is missing; replacing dead or missing smoke-detector batteries; utilities for repairs or cleaning; trips to let in company representatives to remove your telephone or TV cable services or rental items (if you so request or have moved out); trips to open the apartment when you or any guest or occupant is missing a key; unreturned keys; missing or burned-out light bulbs; removing or stored under paragraph 13; removing illegally parked vehicles; special trips for trash removal caused by parked vehicles blocking dumpsters; false security-alarm charges unless due to our negligence; animal- related charges under paragraphs 6 and 27; government fees or fines against us for violation (by you, your occupants, or guests) of local ordinances relating to smoke detectors, false alarms, recycling, or other matters; late-payment and returned-check charges; a charge for owner/manager's time and inconvenience in our lawful removal of an animal or in any valid eviction proceeding against you, plus attorney's fees, court costs, and filing fees actually paid; and other sums due under this Lease Contract.

You'll be liable to us for: (1) charges for replacing all keys and access devices referenced in paragraph 5 if you fail to return them on or before your actual move-out date; (2) accelerated rent if you have violated paragraph 32; and (3) a reletting fee if you have violated paragraph 11.

42. **DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** We'll mail you your security deposit refund (less lawful deductions) and an itemized accounting of any deductions no later than 60 days after surrender or abandonment, unless statutes provide otherwise.

You have surrendered the apartment when: (1) the move-out date has passed and no one is living in the apartment in our reasonable judgment; or (2) all apartment keys and access devices listed in paragraph 5 have been turned in where rent is paid--whichever date occurs first.

You have abandoned the apartment when all of the following have occurred: (1) everyone appears to have moved out in our reasonable judgment; (2) clothes, furniture, and personal belongings have been substantially removed in our reasonable judgment; (3) you've been in default for non-payment of rent for 5 consecutive days or water, gas, or electric service for the apartment not connected in our name has been terminated; and (4) you've not responded for 2 days to our notice left on the inside of the main entry door, stating that we consider the apartment abandoned. An apartment is also "abandoned" 10 days after the death of a sole resident.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the apartment; determine any security deposit deductions; and remove property left in the apartment. Surrender, abandonment, and judicial eviction affect your rights to property left in the apartment (paragraph 13), but do not affect our mitigation obligations (paragraph 32).

## Signatures, Originals and Attachments

43. **ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures--one for you and one or more for us. Our rules and community policies, if any, will be attached to the Lease Contract and given to you at signing. When an Inventory and Condition form is completed, both you and we should retain a copy. The items checked below are attached to this Lease Contract and are binding even if not initialed or signed.

- ☒ Animal Addendum
- ☐ Inventory and Condition Form
- ☒ Mold Addendum
- ☒ Enclosed Garage Addendum, dated _____
- ☐ Community Policies Addendum, dated _____
- ☐ Lease Contract Guaranty ( ____ guaranties, if more than one)
- ☐ Notice of Intent to Move Out Form
- ☐ Parking Permit or Sticker (quantity: ____ )
- ☐ Satellite Dish or Antenna Addendum
- ☐ Asbestos Addendum (if asbestos is present)
- ☐ Lead Hazard Information and Disclosure Addendum (federal)
- ☒ Utility Addendum
- ☒ Remote Control, Card or Code Access Gate Addendum, dated _____

- ☒ Lease Contract Buy-Out Agreement
- ☒ Intrusion Alarm Addendum, dated _____
- ☒ Other   **Community Guidelines Book**
- ☒ Other   **Bed Bug Addendum**

You are legally bound by this document.
Read it carefully before signing.

Resident or Residents (all sign below)
_Surratt_   1/18/13

Owner or Owner's Representative (signing on behalf of owner)
_____   1/31/13

Address and phone number of owner's representative for notice purposes
9110 East Florida Ave
Denver, CO 80247
(303) 745-3071

Name and address of locator service (if applicable)

Date form is filled out (same as on top of page 1)   01/18/2013

SPECIAL PROVISIONS (CONTINUED FROM PAGE 1). _____

 

**APARTMENT LEASE CONTRACT ADDENDUM FOR ENCLOSED GARAGE, CARPORT, OR STORAGE UNIT**

1. **Dwelling Unit Description.** Unit No. **05102**, **9100 E. Florida Ave.** (street address) in **Denver** (city), Colorado, **80247** (zip code).

2. **Lease Contract Description.**
   Lease Contract date: **January 18, 2013**
   Owner's name: **KFED DOR 85B LLC, EPS Colorado LLC, KOR Colorado LLC, et.al**

   Residents (list all residents): **Joy Surratt**

3. **Garage, carport, or storage unit.** You are entitled to exclusive possession of: (check as applicable)
   ☐ garage or carport attached to the dwelling;
   ☒ garage space number(s) **1202 transf**;
   ☐ carport space number(s) _____ ; and/or
   ☐ storage unit number(s) _____ .
   The monthly rent in paragraph 6 of the Lease Contract covers both the dwelling and the checked area(s) above. All terms and conditions of the Lease Contract apply to the above areas unless modified by this addendum.

4. **Security Deposit.** An additional security deposit of $ **50.00** will be charged for the checked areas above. We [check one] ☐ will consider or ☒ will not consider this additional security deposit a general security deposit for all purposes. The security deposit amount in Provision 4 of the Lease Contract [check one] ☐ does or ☒ does not include this additional deposit amount. Refund of the additional security deposit will be subject to the terms and conditions set forth in the Lease Contract regardless of whether it is considered part of the general security deposit.

5. **Additional Monthly Rent.** Your total monthly rent (as stated in the Lease Contract) will be increased by $ **70.00**. The monthly rent amount in Provision 6 of the Lease Contract [check one] ☐ includes ☒ does not include this additional rent.

6. **Use restrictions.** Garage or carport may be used only for storage of operable motor vehicles unless otherwise stated in our rules or community policies. Storage units may be used only for storage of personal property. No one may sleep, cook, barbeque, or live in a garage, carport, or storage unit. Persons not listed as a resident or occupant in the Lease Contract may not use the areas covered by this addendum. No plants may be grown in such areas.

7. **No dangerous items.** Items that pose an environmental hazard or a risk to the safety or health of other residents, occupants, or neighbors in our sole judgment or that violate any government regulation may not be stored. Prohibited items include fuel (other than in a properly capped fuel tank of a vehicle or a closed briquette lighter fluid container), fireworks, rags, piles of paper, or other material that may create a fire or environmental hazard. We may remove from such areas, without prior notice, items that we believe might constitute a fire or environmental hazard. Because of carbon monoxide risks, you may not run the motor of a vehicle inside a garage unless the garage door is open to allow fumes to escape.

8. **No smoke, fire, or carbon monoxide detectors.** No smoke, fire, or carbon monoxide detectors will be furnished by us unless required by law.

9. **Garage door opener.** If an enclosed garage is furnished, you ☒ will ☐ will not be provided with a ☒ garage door opener and/or ☐ garage key. You will be responsible for maintenance of any garage door opener, including battery replacement. Transmitter frequency settings may not be changed on the garage door or opener without our prior written consent.

10. **Security.** Always remember to lock any door of a garage or storage unit and any door between a garage and the dwelling. When leaving, be sure to lock all keyed deadbolt locks.

11. **Insurance and loss/damage to your property.** You will maintain liability and comprehensive insurance coverage for any vehicle parked or stored. We are not responsible for pest control in such areas.

12. **Compliance.** We may periodically open and enter garages and storerooms to ensure compliance with this addendum. In the event we enter the garage or storerooms, we will comply with the notice provisions set forth in the Lease Contract.

13. **No lock changes, alterations, or improvements.** Without our prior written consent, locks on doors of garages and storage units may not be rekeyed, added, or changed, and improvements, alterations, or electrical extensions or changes to the interior or exterior of such areas are not allowed. You may not place nails, screws, bolts, or hooks into walls, ceilings, floors, or doors. Any damage not caused by us or our representatives to areas covered by this addendum will be paid for by you.

14. **Move-out and remedies.** Any items remaining after you have vacated the dwelling will be removed, sold, or otherwise disposed of according to the Lease Contract, which addresses disposition or sale of property left in an abandoned or surrendered dwelling. All remedies in the Lease Contract apply to areas covered by this addendum.

15. **Special Provisions.** The following special provisions control over conflicting provisions of this printed form:
    **If garage remote is not returned upon move out or cancellation of garage a $50.00 fee will be charged.**

_____ 3/25/13
Resident or Residents
[All residents must sign here]

_____
Owner or Owner's Representative
[signs here]

Date of Lease Contract
**January 18, 2013**

Copyright 2012, National Apartment Association, Inc. - 11/2012, Colorado

Joy Surratt

| Resident: | Surratt, Joy (R ET01286162) | Move In Date: | 1/18/2013 | Deposits Required: | $450.00 |
|---|---|---|---|---|---|
| Resident Id: | ADD770-05-05102-2 | Current Lease: | 1/18/2013 | Deposits Received: | $450.00 |
| From: | 01/2013 | Notice To Vacate: | | Current Balance: | $4,403.09 |
| Through: | 08/2013 | Vacate Date: | | | |

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 05/01/2013 | Garage Rental | May Charge | 70.00 | | 48.78 |
| 05/01/2013 | Pet fees & Charges | May Charge | 25.00 | | 73.78 |
| 05/01/2013 | Rent | May Charge | 1,200.00 | | 1,273.78 |
| 05/03/2013 | Check (scanned) | #02367 | | 1,300.00 | -26.22 |
| 05/09/2013 | NSF | #02367 | 1,300.00 | | 1,273.78 |
| 05/09/2013 | NSF Fee | NSF Fee | 40.00 | | 1,313.78 |
| 05/09/2013 | Late Fee | NSF Late Fee | 75.00 | | 1,388.78 |
| 05/13/2013 | Legal Fees | Attorney Fee | 235.00 | | 1,623.78 |
| 05/23/2013 | Check (scanned) | #NP935 | | 1,623.78 | 0.00 |
| 05/24/2013 | Resident Utility Billing | Resident Utility Billing | 3.26 | | 3.26 |
| 05/24/2013 | Resident Utility Billing | Resident Utility Billing | 5.79 | | 9.05 |
| 05/24/2013 | Resident Utility Billing | Resident Utility Billing | 10.41 | | 19.46 |
| 05/24/2013 | Resident Utility Billing | Resident Utility Billing | 10.78 | | 30.24 |
| 05/31/2013 | Check (scanned) | #NP936 | | 50.00 | -19.76 |
| 06/01/2013 | Garage Rental | June Charge | 70.00 | | 50.24 |
| 06/01/2013 | Pet fees & Charges | June Charge | 25.00 | | 75.24 |
| 06/01/2013 | Rent | June Charge | 1,200.00 | | 1,275.24 |
| 06/04/2013 | Late Fee | RM LATE FEE | 75.00 | | 1,350.24 |
| 06/13/2013 | Legal Fees | Attorney Fee | 235.00 | | 1,585.24 |
| 06/25/2013 | Resident Utility Billing | Resident Utility Billing | 3.50 | | 1,588.74 |
| 06/25/2013 | Resident Utility Billing | Resident Utility Billing | 6.67 | | 1,595.41 |
| 06/25/2013 | Resident Utility Billing | Resident Utility Billing | 10.89 | | 1,606.30 |
| 06/25/2013 | Resident Utility Billing | Resident Utility Billing | 16.27 | | 1,622.57 |
| 07/01/2013 | Garage Rental | July Charge | 70.00 | | 1,692.57 |
| 07/01/2013 | Pet fees & Charges | July Charge | 25.00 | | 1,717.57 |
| 07/01/2013 | Rent | July Charge | 1,200.00 | | 2,917.57 |
| 07/05/2013 | Late Fee | RM LATE FEE | 75.00 | | 2,992.57 |
| 07/25/2013 | Resident Utility Billing | Resident Utility Billing | 3.50 | | 2,996.07 |
| 07/25/2013 | Resident Utility Billing | Resident Utility Billing | 6.08 | | 3,002.15 |
| 07/25/2013 | Resident Utility Billing | Resident Utility Billing | 10.77 | | 3,012.92 |
| 07/25/2013 | Resident Utility Billing | Resident Utility Billing | 20.17 | | 3,033.09 |
| 08/01/2013 | Garage Rental | August Charge | 70.00 | | 3,103.09 |
| 08/01/2013 | Pet fees & Charges | August Charge | 25.00 | | 3,128.09 |
| 08/01/2013 | Rent | August Charge | 1,200.00 | | 4,328.09 |
| 08/04/2013 | Late Fee | RM LATE FEE | 75.00 | | 4,403.09 |

### Recurring Charges

| Effective Dates | Description | Amount | Current? |
|---|---|---|---|
| 1/18/2013-11/17/2013 | Pet fees & Charges | $25.00 | Y |
| 1/18/2013-11/17/2013 | Rent | $1,200.00 | Y |
| 5/15/2013-11/17/2013 | Garage Rental | $70.00 | Y |

## Addison at Cherry Creek
## Resident Statement

| | | | | | |
|---|---|---|---|---|---|
| Resident: | Surratt, Joy (R ET01286162) | Move In Date: | 1/18/2013 | Deposits Required: | $450.00 |
| Resident Id: | ADD770-05-05102-2 | Current Lease: | 1/18/2013 | Deposits Received: | $450.00 |
| From: | 01/2013 | Notice To Vacate: | | Current Balance: | $4,403.09 |
| Through: | 08/2013 | Vacate Date: | | | |

| Date | Type | Description | Charges | Payments/Credits | Balance |
|---|---|---|---|---|---|
| 01/01/2013 | Balance | Balance Forward | | | 0.00 |
| 01/09/2013 | Application Fee | Application Fee | 45.00 | | 45.00 |
| 01/09/2013 | Non Refundable Fee | Non Refundable Fee | 125.00 | | 170.00 |
| 01/10/2013 | Check (scanned) | #02049 | | 250.00 | -80.00 |
| 01/10/2013 | Application Fee | Look and Lease Special | | 45.00 | -125.00 |
| 01/10/2013 | Non Refundable Fee | Look and Lease Special | | 125.00 | -250.00 |
| 01/15/2013 | Payment Reversal | #02049 | 250.00 | | 0.00 |
| 01/17/2013 | Application Fee | Application Fee | 45.00 | | 45.00 |
| 01/17/2013 | Non Refundable Fee | Non Refundable Fee | 125.00 | | 170.00 |
| 01/18/2013 | Garage Rental | Scheduler Move In | 32.00 | | 202.00 |
| 01/18/2013 | Rent | Scheduler Move In | 542.00 | | 744.00 |
| 01/21/2013 | Check | #NP2 | | 730.00 | 14.00 |
| 01/21/2013 | Check (scanned) | #NP1 | | 10.00 | 4.00 |
| 01/24/2013 | Application Fee | Charged Twice | | 45.00 | -41.00 |
| 01/24/2013 | Non Refundable Fee | Charged Twice | | 125.00 | -166.00 |
| 01/24/2013 | Pet fees & Charges | January Pet Rent | 11.00 | | -155.00 |
| 01/24/2013 | Pet fees & Charges | Pet Fee | 150.00 | | -5.00 |
| 02/01/2013 | Garage Rental | February Charge | 70.00 | | 65.00 |
| 02/01/2013 | Pet fees & Charges | February Charge | 25.00 | | 90.00 |
| 02/01/2013 | Rent | February Charge | 1,200.00 | | 1,290.00 |
| 02/03/2013 | Check (scanned) | #02054 | | 1,290.00 | 0.00 |
| 02/07/2013 | NSF | #02054 | 1,290.00 | | 1,290.00 |
| 02/07/2013 | NSF Fee | NSF Fee | 40.00 | | 1,330.00 |
| 02/07/2013 | Late Fee | NSF Late Fee | 75.00 | | 1,405.00 |
| 02/12/2013 | Legal Fees | Attorney Fee | 235.00 | | 1,640.00 |
| 02/26/2013 | Resident Utility Billing | Resident Utility Billing | 2.59 | | 1,642.59 |
| 02/26/2013 | Resident Utility Billing | Resident Utility Billing | 3.26 | | 1,645.85 |
| 02/26/2013 | Resident Utility Billing | Resident Utility Billing | 4.91 | | 1,650.76 |
| 02/26/2013 | Resident Utility Billing | Resident Utility Billing | 4.95 | | 1,655.71 |
| 02/26/2013 | Resident Utility Billing | Resident Utility Billing | 5.74 | | 1,661.45 |
| 02/27/2013 | Check (scanned) | #NP677 | | 1,640.00 | 21.45 |
| 02/28/2013 | Check (scanned) | #NP891 | | 1,295.00 | -1,273.55 |
| 03/01/2013 | Garage Rental | March Charge | 70.00 | | -1,203.55 |
| 03/01/2013 | Pet fees & Charges | March Charge | 25.00 | | -1,178.55 |
| 03/01/2013 | Rent | March Charge | 1,200.00 | | 21.45 |
| 03/03/2013 | Check (scanned) | #NP894 | | 100.00 | -78.55 |
| 03/26/2013 | Check (scanned) | #NP934 | | 1,300.00 | -1,378.55 |
| 03/26/2013 | Resident Utility Billing | Resident Utility Billing | 3.26 | | -1,375.29 |
| 03/26/2013 | Resident Utility Billing | Resident Utility Billing | 6.09 | | -1,369.20 |
| 03/26/2013 | Resident Utility Billing | Resident Utility Billing | 10.43 | | -1,358.77 |
| 03/26/2013 | Resident Utility Billing | Resident Utility Billing | 10.84 | | -1,347.93 |
| 04/01/2013 | Garage Rental | April Charge | 70.00 | | -1,277.93 |
| 04/01/2013 | Pet fees & Charges | April Charge | 25.00 | | -1,252.93 |
| 04/01/2013 | Rent | April Charge | 1,200.00 | | -52.93 |
| 04/26/2013 | Resident Utility Billing | Resident Utility Billing | 3.26 | | -49.67 |
| 04/26/2013 | Resident Utility Billing | Resident Utility Billing | 6.61 | | -43.06 |
| 04/26/2013 | Resident Utility Billing | Resident Utility Billing | 10.84 | | -32.22 |
| 04/26/2013 | Resident Utility Billing | Resident Utility Billing | 11.00 | | -21.22 |

Addison at Cherry Creek



EXHIBIT 2
13-21033-EEB